[No. A040217. First Dist., Div. Five. Oct. 14, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
J. C. LINDSEY, Defendant and Appellant.

<h2>COUNSEL</h2>

Neoma Kenwood, under appointment by the Court of Appeal, and Robert K. Calhoun, Jr., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, David D. Salmon and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KING, J.**—In this case we hold the prosecutor committed prejudicial misconduct during closing argument by condemning defense counsel for failing to reveal an alibi defense before trial.

J.C. Lindsey appeals from a judgment of conviction for first degree burglary (Pen. Code, §§ 459, 460) and first degree robbery (Pen. Code, §§ 211, 212.5). We reverse.

Arla Aiello, a 59-year-old White woman, was robbed in her residence by a young Black man on the afternoon of January 26, 1987. During the robbery the perpetrator pushed Aiello to the floor, knelt on her chest and removed her reading glasses. He told her, "I need money. I cannot find a job." Aiello gave him money from her wallet and he left with a 12-pack of beer. Aiello was hospitalized with broken ribs and a punctured lung.

While in the hospital Aiello was shown a photographic lineup. She identified Lindsey, who lived a quarter of a mile from her. At trial she testified she was "99 percent" sure that Lindsey was the perpetrator, and she said she was "almost positive" his voice was that of the perpetrator.

The only other significant evidence against Lindsey was a tan jacket found near Aiello's house. At trial Lindsey put the jacket on, and the prosecutor argued it fit him.

Lindsey presented an alibi defense. His mother testified he had become sick from overeating on January 23, and he was still sick and stayed home in bed on January 26. She said the jacket found in Aiello's back yard did not belong to him.

A jury convicted Lindsey of first degree burglary and first degree robbery but rejected a great bodily injury allegation (Pen. Code, § 12022.7). The court sentenced him to the upper term of six years' imprisonment for the robbery and stayed an upper term of six years for the burglary.

 Lindsey asserts numerous instances of prosecutorial misconduct. All but one lacked an objection and/or a request for an admonition during trial, so that any error was waived. (*People* v. *Ghent* (1987) 43 Cal.3d 739, 762 [239 Cal.Rptr. 82, 739 P.2d 1250]; *People* v. *Green* (1980) 27 Cal.3d 1, 27 [164 Cal.Rptr. 1, 609 P.2d 468].) The remaining instance was substantial and requires reversal.

The reversible misconduct occurred during the rebuttal portion of closing argument, when the prosecutor condemned defense counsel for failing to inform the district attorney's office or the police of the alibi defense before trial. Defense counsel had said in her closing argument that she had become "a little snippy" at times during the trial because "I am representing somebody that is innocent." The prosecutor responded as follows: "Well, it makes me angry as an officer of the court that this man who is innocent,

according to her words, has sat in jail since February 4th, went through a Preliminary Examination when the alibi was there all the time and this man was in jail and this woman allowed him to sit in jail without coming to the District Attorney's Office, without coming to the Police Department saying, listen, we've got proof—Mrs. Lindsey—that this man didn't do the crime. Where was this information until today? It's inconceivable. It goes against common sense, and it is unreasonable to believe that another officer of the court would allow her innocent client to sit in jail for five months and not say anything to anyone."

██ ██ Defense counsel objected, but the court overruled the objection, asserting, "I think it is appropriate argument."[1] The prosecutor continued: "It is inconceivable, Ladies and Gentlemen of the Jury, that a public Defender knowledgeable in the law, in a working—in the judicial system, in the court system, doesn't come forth with this information until the day of trial. He is an innocent man, mind you. He sat in jail for five months, and nothing—a mother, [the defense investigator], Defense Attorney has said nothing to us about this alibi. . . ."

The situation is quite similar to *People* v. *Galloway* (1979) 100 Cal.App.3d 551 [160 Cal.Rptr. 914]. There the defendant testified in his own behalf and presented an alibi defense. The prosecutor cross-examined him about his failure to mention the alibi previously, and asserted this failure in closing argument. The appellate court held the cross-examination and argument violated *Doyle* v. *Ohio* (1976) 426 U.S. 610, 619 [49 L.Ed.2d 91, 98, 96 S.Ct. 2240], which held impeachment of a defendant's testimony with postarrest silence is a violation of due process. (100 Cal.App.3d at pp. 556-559.) The *Galloway* court relied on the rationale of *Doyle* that if a defendant has been advised of and exercises the right to remain silent it would be unfair to permit the prosecutor to use that silence against him at trial. ██ (100 Cal.App.3d at p. 557; see *Doyle* v. *Ohio, supra,* 426 U.S. at p. 619, fn. 10 [49 L.Ed.2d at p. 98].)[2]

██ The only significant difference between the present case and *Galloway* is that here the prosecutor commented on *defense counsel's* failure to mention the alibi defense to the prosecutor or the police, rather than the defendant's failure to do so. But given the general understanding, widespread even among nonlawyers, that an attorney speaks for his or her client,

[1] The lack of a request for an admonition in connection with the objection does not preclude assertion of the misconduct on appeal, since the court immediately overruled the objection. (*People* v. *Green, supra,* 27 Cal.3d at p. 35, fn. 19.)

[2] A testifying defendant who waived *Miranda* and spoke to the police can be impeached with postarrest silence that is inconsistent with the trial testimony (e.g., *People* v. *Poon* (1981) 125 Cal.App.3d 55, 84 [178 Cal.Rptr. 375]), but Lindsey did not testify.

the distinction is inconsequential. The prosecutor's condemnation of counsel for failing to reveal the alibi defense was tantamount to condemnation of the defendant himself for failing to do so.

██ Lindsey had a constitutional right to remain silent and not discuss his alibi with the prosecutor or the police. He also had a judicially-bestowed right to withhold any advance notice of the alibi defense. (*Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45].) ██ These rights would be stripped of much of their meaning and effect if the prosecutor were permitted to use their exercise against the defendant at trial. The prosecutor's use of Lindsey's pretrial silence through his counsel concerning the alibi unfairly infringed his exercise of the right not to speak to the prosecutor or the police and thus was a violation of due process.

Additionally, the prosecutor's comments improperly disparaged defense counsel, implying counsel was incompetent in failing to reveal the alibi and thereby secure Lindsey's release from jail. This implication was unfair because it was based on the premise—perhaps plausible to nonlawyers but absurd to any knowledgeable attorney—that the prosecutor would simply have dropped all charges merely because Lindsey's mother claimed he was home in bed during the robbery. Alternatively, the comments improperly implied defense counsel did not believe the alibi or had participated in its fabrication. (See *People* v. *Bain* (1971) 5 Cal.3d 839, 847 [97 Cal.Rptr. 684, 489 P.2d 564].)[3]

██ The *Galloway*-like error was of constitutional dimension and thus subject to the test for prejudice set forth in *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (*People* v. *Galloway, supra,* 100 Cal.App.3d at p. 559.) The judgment must be reversed unless the error was harmless beyond a reasonable doubt.

More specifically, the error is prejudicial if "the evidence against defendant is less than overwhelming" and "the improper comment touched 'a live nerve in the [appellant's] defense. . . .'" (*People* v. *Galloway, supra,* 100 Cal.App.3d at p. 560, quoting *People* v. *Modesto* (1967) 66 Cal.2d 695, 714 [59 Cal.Rptr. 124, 427 P.2d 788].) ██ Both factors are present here. The improper comment touched a "live nerve" by striking at the heart of Lindsey's sole defense. (*People* v. *Galloway, supra,* at p. 561.) Except for the jacket, no significant physical or circumstantial evidence tied him to the crime. The only solid evidence that he was the perpetrator was the victim's "99 percent" and "almost positive" identifications. Under the present cir-

---

[3]The prosecutor is not entirely to blame, as the court permitted the improper comments over defense counsel's objection.

cumstances the cross-racial eyewitness identification of a stranger cannot be characterized as overwhelming evidence of guilt. (See *People* v. *McDonald* (1984) 37 Cal.3d 351, 368 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].)

Consequently the misconduct cannot be characterized as harmless beyond a reasonable doubt. As in *Galloway,* reversal is compelled. (*People* v. *Galloway, supra,* 100 Cal.App.3d at pp. 559-562.) Even independent of the *Galloway*-like error, we find the improper disparagement of counsel was prejudicial under *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

The judgment is reversed.

Low, P. J., and Haning, J., concurred.

A petition for a rehearing was denied November 9, 1988, and the opinion was modified to read as printed above.