[No. E006476. Fourth Dist., Div. Two. Oct. 5, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER EDWIN ASAY, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, V and VI.

**COUNSEL**

David W. Call and Edward P. Foley, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Holly D. Wilkens and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HOLLENHORST, Acting P. J.**—Defendant was found guilty of first degree murder (Pen. Code, § 187, subd. (a)) and second degree robbery (Pen. Code, § 211). The jury also found that he used a firearm and that the murder was committed in the course of a robbery. He appeals, urging (1) a taped confession should not have been played to the jury; (2) the trial court erred in allowing evidence when the prosecution rejected defendant's proffered stipulations; and (3) the prosecutor was guilty of prejudicial misconduct. In the unpublished portion of this opinion we find that (1) defendant's confession occurred after a sufficient invocation of his right to counsel; (2) the trial court did not allow the improper admission of irrelevant evidence; and (3) the defendant failed to preserve objections to the prosecutor's conduct.

I

FACTS

Defendant was the manager of a Sunshine Travel Stop store on Interstate 15 near Baker, California. An armored car service regularly picked up money from his store, from another Sunshine Travel Stop store about 50 miles away, and from another store in the area.

The victim, Gerald Gauthier, was employed by the armored car service. On February 8, 1987, he made his usual run to make a money pickup at the three businesses. No armored cars were available that day so Mr. Gauthier drove his own small station wagon. As he left the second store he was confronted by defendant on a freeway on-ramp. Mr. Gauthier apparently stopped because he knew defendant. Defendant told him that he had forgotten to order change that morning. As Mr. Gauthier wrote out a receipt, defendant killed him by shooting him at least five times. Defendant then stole $16,000.

Defendant's supervisor, John Nall, testified that he was a good friend of defendant. On December 12, 1987, defendant's wife called Mr. Nall and said she wanted to turn in her husband for the murder of Mr. Gauthier. Mr. Nall, who was living in Yuma, called the Yuma sheriff's office. Defendant was arrested in Arizona on December 12, 1987, and was interviewed by San Bernardino sheriff's deputies. He confessed to the killing during the interview.

Mr. Nall also testified that defendant called him from jail and confessed the crime to him.

## II

## THE ADMISSIBILITY OF THE CONFESSION TO LAW ENFORCEMENT OFFICERS*

. . . . . . . . . . . . . . . . . . . . . .

## III

## WAS THE ERROR REVERSIBLE PER SE?

California has long followed the rule that the introduction in evidence of a confession obtained from a defendant in violation of *Miranda* rules (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) is automatically prejudicial and therefore reversible per se. (See, e.g. *People* v. *Randall* (1970) 1 Cal.3d 948, 958 [83 Cal.Rptr. 658, 464 P.2d 114].) Admissions, on the other hand, are "deemed prejudicial unless the People show beyond a reasonable doubt that the error complained of did not contribute to the verdict . . . ." (*People* v. *McClary* [(1977)] 20 Cal.3d 218, 230 [142 Cal.Rptr. 163, 571 P.2d 620].)

The issue presented here is whether the reversible per se rule remains a viable rule as to illegally admitted confessions in the light of the recent case of *Rose* v. *Clark* [(1986)] 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101]. Defendant contends that the reversible per se rule applies to the erroneous admission of any confession. The People contend that the harmless error test of *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065] applies, as interpreted in *Rose* v. *Clark*.

Two recent decisions have discussed this precise issue. In *People* v. *Morris* (1987) 192 Cal.App.3d 380 [237 Cal.Rptr. 402], the court avoided the issue by finding that the statements in question were admissions, not a confession. The court pointed out in footnote five that the reversible per se rule regarding an improperly induced confession "may need to be reiterated if it is to remain viable" in the light of *Rose* v. *Clark*. The footnote continues: "Since the basis for per se reversal upon the erroneous admission of a coerced confession is the inherent violation of due process, the apparent California rule that improper admission of any confession, even one whose impropriety is based on a *Miranda* violation, requires per se reversal may have to be reexamined." (*Id.*, at p. 392.)

In a recently published opinion, discussed below, our brethren in the First District considered this issue and found that they had "no choice but

---

*See footnote, *ante*, page 608.

to automatically reverse defendant's conviction." (*People* v. *Porter* [(1990)] 221 Cal.App.3d 1213, 1223 [270 Cal.Rptr. 773].) Our Supreme Court denied a request for review, and did not order the opinion depublished.

The resolution of this issue depends, in large part, upon whether the California reversible per se rule is a separate and more stringent test than the federal harmless error rule enunciated in *Chapman* v. *California, supra,* 386 U.S. 18. Before reaching this question, we consider the development of the reversible per se standard.

At the time of the *Miranda* decision in 1965, the rule was well established in California that the erroneous admission of a confession was prejudicial per se and that reversal was therefore required. (*People* v. *Dorado* (1965) 62 Cal.2d 338, 356 [42 Cal.Rptr. 169, 398 P.2d 361]; *People* v. *Schader* (1965) 62 Cal.2d 716, 728-731 [44 Cal.Rptr. 193, 401 P.2d 665].) In *Schader,* our Supreme Court collected the earlier cases, including five United States Supreme Court cases that hold that the introduction of an involuntary confession automatically requires reversal. The court said: "The rationale for this rule rests upon the fact that if 'a coerced confession constitutes a part of the evidence before the jury and a general verdict is returned, no one can say what credit and weight the jury gave to the confession. And in these circumstances this Court has uniformly held that even though there may have been sufficient evidence, apart from the coerced confession, to support the judgment of conviction, the admission in evidence, over objection, of the coerced confession vitiates the judgment because it violates the Due Process Clause of the Fourteenth Amendment.'" (62 Cal.2d at p. 729, quoting *Payne* v. *Arkansas* (1958) 356 U.S. 560, 568 [2 L.Ed.2d 975, 981, 78 S.Ct. 844].) The court concluded that the reason for the exclusion of the confession was unimportant because: "[a]fter holding that the confession should not have been admitted, we can only be concerned with the effect of the confession upon the jury's deliberation, regardless of the type of error involved. It is because of the effect of the confession that the reversal is compelled." (*Id.,* at p. 730.) The *Schader* court specifically rejected the argument that a voluntary confession should be treated differently from an involuntary confession because the devastating effect on the jury is the same in either case. (*Id.,* at pp. 730-731.)

The *Schader* court cited *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], as its primary authority for the automatic reversal rule. In *Jackson,* the court invalidated New York rules that allowed the jury to decide whether a confession was voluntary or coerced. The jury was instructed to disregard the confession if it found the confession involuntary or coerced. After overruling an earlier case that approved this procedure, the court remanded the case for a state court

hearing on the issue of whether the confession was voluntary. However, the court rejected the argument that Jackson was entitled to a new trial, pointing out that, if the confession was found voluntary, "there is no constitutional prejudice to Jackson from the New York procedure if the confession is now properly found to be voluntary and therefore admissible." (*Id.*, at p. 394 [12 L.Ed.2d at p. 926].)

In *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *Miranda* v. *Arizona, supra*, 384 U.S. 436, the court held that confessions obtained during custodial interrogations were inadmissible unless the police observed procedural safeguards (set out in the *Miranda* opinion). The court found custodial interrogation inherently coercive: "Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice."[3] (*Id.*, at p. 458 [16 L.Ed.2d at p. 714].)

Many other California cases following *Miranda* applied the reversible per se rule to confessions obtained in violation of *Miranda*. (See, e.g. *People* v. *Fioritto* (1968) 68 Cal.2d 714, 720 [68 Cal.Rptr. 817, 441 P.2d 625]; *People* v. *Powell* (1967) 67 Cal.2d 32, 51-52 [59 Cal.Rptr. 817, 429 P.2d 137], and *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)

In 1967, the United States Supreme Court decided *Chapman* v. *California, supra*, 386 U.S. 18. In *Chapman*, the court considered whether federal constitutional error can ever be harmless, and whether the error in that case was harmless. In answering the first question, the court said: "Whether a conviction for crime should stand when a State has failed to accord federal constitutionally guaranteed rights is . . . a federal question . . . ." (*Id.*, at p. 21 [17 L.Ed.2d at p. 709].) Accordingly, the court held that defendant's federal constitutional rights were to be protected under federal law. Defendant argued that federal constitutional error can never be harmless but the court rejected that contention. It then decided that the appropriate federal harmless error rule was the harmless beyond a reasonable doubt standard. The conviction was therefore reversed because the state had not "demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions." (*Id.*,

---

[3] The court also states: "We have concluded that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." (*Miranda* v. *Arizona, supra*, 384 U.S. 436, 467 [16 L.Ed.2d 694, 719].) Under earlier cases, confessions obtained without a valid waiver of *Miranda* rights were deemed to have been coerced. (*People* v. *Murtishaw* (1981) 29 Cal.3d 733, 753 [175 Cal.Rptr. 738, 631 P.2d 446].)

at p. 26 [17 L.Ed.2d at p. 711].) Citing *Payne* v. *Arkansas, supra*, 356 U.S. 560, the court said that the prosecutor's comments "can no more be considered harmless than the introduction against a defendant of a coerced confession." (386 U.S. at p. 26 [17 L.Ed.2d at p. 711.])

In *Rose* v. *Clark, supra*, 478 U.S. 570, the United States Supreme Court considered whether the *Chapman* harmless error standard applied to jury instructions that violate federal law. The court cites a number of cases that applied the *Chapman* rule to federal constitutional violations, including *Miranda* violations. The court said: "Despite the strong interests that support the harmless-error doctrine, the Court in *Chapman* recognized that some constitutional errors require reversal without regard to the evidence in the particular case. [Citations.] This limitation recognizes that some errors necessarily render a trial fundamentally unfair." (*Id.*, at p. 577 [92 L.Ed.2d at p. 470].)

The significance of *Rose* v. *Clark* is that it then proceeded to identify which constitutional errors are per se reversible errors. These include the use of a coerced confession, such as the confession in *Payne* v. *Arkansas, supra*, 356 U.S. 560, the denial of right to counsel, as in *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733], or the absence of an impartial judge, as in *Tumey* v. *Ohio* (1927) 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243]. Each of these errors deprives defendant of his right to a fair trial. "Harmless error analysis thus presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury . . . . [¶] Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." (*Rose* v. *Clark, supra*, 478 U.S. 570, 578-579 [92 L.Ed.2d 460, 471].)

In *People* v. *Boyer* [(1989)] 48 Cal.3d 247 [252 Cal.Rptr. 96, 768 P.2d 610], our Supreme Court considered the prejudicial effect of statements introduced in violation of the defendant's *Miranda* rights. The conviction was reversed because the improper admission of the statements was not harmless beyond a reasonable doubt under the *Chapman* standard. In a footnote, the court discussed the impact of *Rose* v. *Clark*. (*Id.*, at pp. 279-280, fn. 23.) The court noted that the different treatment given to confessions as opposed to admissions in California is a distinction "never expressly divorced from federal law" and such a distinction is doubtful in the light of *Rose* v. *Clark*. After discussing the *Rose* standard, the footnote states: "Under this reasoning, if a wrongfully introduced confession is invalid only for Fourth Amendment or prophylactic *Miranda* reasons, harmless-error analysis may be appropriate." (*Ibid.*)

As *Boyer* points out, the California standard has not been "expressly divorced" from the federal standard.[4] Indeed, despite semantic differences,[5] both California and federal cases are based upon the presumed effect of the confession on the jury. It is therefore unclear whether the California Supreme Court has adopted a separate state standard for testing whether the error is reversible or not.[6]

The *Porter* court assumes that it has done so and proceeds from that assumption to find that the California standard is a more stringent standard than the *Chapman* standard. (*People* v. *Porter, supra,* 221 Cal.App.3d 1213, 1221.) It then finds that such a standard is still valid and it survives adoption of Proposition 8 by the electorate in 1982, because Proposition 8 is limited to the question of admissibility of evidence. Although we find this holding questionable under *People* v. *Markham* [(1989)] 49 Cal.3d 63, 71 [260 Cal.Rptr. 273, 775 P.2d 1042], and *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307], we need not address the issue here because we do not agree that the reversible per se standard has been adopted by the California Supreme Court as a more stringent state standard.[7]

---

[4] *People* v. *Dorado, supra,* 62 Cal.2d 338, was a seminal case applying the principles enunciated by the United States Supreme Court in *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199] and *Escobedo* v. *Illinois, supra,* 378 U.S. 478. Our Supreme Court said: "Since we must faithfully discharge our duty to apply to the instant case the Constitution of the United States as interpreted by the Supreme Court of the United States, we must follow these recent decisions." (*People* v. *Dorado, supra,* 62 Cal.2d 338, 345.) After discussing the reversible per se rule for confessions, the court states: "Summarizing the principal issue on the confession, we must decide this case in conformity with the decisions of the Supreme Court of the United States. That court having declared the content of a constitutional right, it is our function to enforce it in situations wherever it logically applies. To do otherwise would, in effect, be to distort the United States Constitution itself." (*Id.,* at p. 357.)

[5] As noted above, California courts generally have found that the error is reversible per se if a confession is erroneously admitted, and they do not apply a harmless error analysis. Federal cases apply a harmless error test in all cases except coerced confessions, but generally find that an improperly admitted confession is not harmless.

[6] Although the *Porter* court acknowledges the *Boyer* footnote, it proceeds to ignore its implications because it felt bound by the numerous prior California Supreme Court decisions applying the reversible per se rule. These decisions include a recent decision, *People* v. *Thompson* (1990) 50 Cal.3d 134, 162 [266 Cal.Rptr. 309, 785 P.2d 857]. In a footnote in *Thompson,* our Supreme Court again mentioned the confession/admission distinction, but did not mention the effect of *Rose* v. *Clark* on that distinction. Finding that the statements there were a confession of one offense, but an admission as to another offense, the court found that "under either standard the admission into evidence of defendant's statements, if error, would probably require reversal of the conviction." (*People* v. *Thompson, supra,* 50 Cal.3d 134, 162, fn. 10.) While it can be argued that the word "probably" suggests that a harmless error analysis would be applied to either a confession or an admission, the issue is not discussed further.

[7] In *People* v. *May, supra,* 44 Cal.3d 309, our Supreme Court considered whether Proposition 8 abrogated the rule of *People* v. *Disbrow* (1976) 16 Cal.3d 101 [127 Cal.Rptr. 360, 545 P.2d 272], that statements elicited in violation of the *Miranda* rule were inadmissible for impeachment purposes. In holding that *Disbrow* was indeed abrogated, the court stated that:

Since the *Porter* court finds that Proposition 8 does not prevent the use of a stricter state standard, it concludes that it is bound to follow the stricter standard to reverse the conviction.[8] While we would agree with the *Porter* court that reversal would generally be required if the California Supreme Court had adopted a more stringent standard, we are not convinced that it has done so.

■ The *Porter* court also acknowledges that the federal standard is stated in *Chapman*. Under *Chapman*, if there is federal constitutional error, the question of whether the conviction should stand is a federal question determined by applying the harmless beyond a reasonable doubt standard. Under *Rose* v. *Clark*, this harmless error test applies to all constitutional violations which do not affect the fundamental fairness of the trial. Applying this test here we would find that the *Miranda* violation was a "prophylactic" *Miranda* violation, and the *Chapman* test should be applied.

Our Supreme Court will ultimately have to resolve the question of whether there is a separate state standard that survives Proposition 8. But the *Boyer* footnote clearly suggests that there is not a separate state standard because the California distinction between confessions and admissions for purposes of the reversible per se standard has never been divorced from federal law. (*People* v. *Boyer, supra*, 48 Cal.3d 247, 279-280, fn. 23.)

Examination of the cases discussed above shows that the earlier California cases cited *Jackson* v. *Denno, supra*, 378 U.S. 368, *Payne* v. *Arkansas, supra*, 356 U.S. 560, and other federal cases as their authority for the reversible per se rule. Later cases cited *Miranda* v. *Arizona, supra*, 384 U.S. 436, and *Chapman* v. *California, supra*, 386 U.S. 18, and, in effect, adjusted

"Proposition 8 was crafted for the very purpose, among others, of abrogating cases such as *Disbrow*, which had elevated the procedural rights of the criminal defendant above the level required by the federal Constitution, as interpreted by the United States Supreme Court." (44 Cal.3d at p. 318; see *People* v. *Kimble* (1988) 201 Cal.App.3d 726, 730-731 [248 Cal.Rptr. 41].)

Subsequently, in *People* v. *Markham, supra*, 49 Cal.3d 63, our Supreme Court held that the "judicially declared rule of criminal procedure" adopted in *People* v. *Jimenez* (1978) 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672] (that the People had to prove the voluntariness of a defendant's confession beyond a reasonable doubt) had also been eliminated by Proposition 8. The court found that "the intent of the electorate in passing Proposition 8 was to *curtail* the exclusion of relevant evidence based upon independent state grounds, except as required by the Constitution of the United States. [Citations.] [¶] The Constitution of the United States requires no more than that the voluntariness of confessions or admissions be proved by a preponderance of the evidence at trial. [Citations.] Section 28(d) establishes that standard as the rule in California." (49 Cal.3d at p. 71.)

[8] The *Porter* court declines to apply the *Chapman* test because of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]. (*People* v. *Porter, supra*, 221 Cal.App.3d 1213, 1221.) That case is frequently cited for its holding that: "Under the doctrine of *stare decisis*, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction." (57 Cal.2d at p. 455.)

the applicable California standard to fit the requirements of those cases. Because of the suggestion in *Boyer*, we believe that our Supreme Court will continue this process by applying the principles of *Rose* v. *Clark, supra*, 478 U.S. 570 when an appropriate case is presented to it.[9]

However, we are not required to decide whether there is a California standard separate and distinct from the federal standard in this case because both California and federal cases apply the harmless error test in the case of multiple confessions. (*People* v. *Cotter* (1965) 63 Cal.2d 386, 398 [46 Cal.Rptr. 622, 405 P.2d 862], judgment vacated and case remanded for further consideration in light of *Chapman* v. *California, supra*, 386 U.S. 18, by *per curiam* opinion in *Cotter* v. *California* (1967) 386 U.S. 274 [18 L.Ed.2d 43, 87 S.Ct. 1035]; *Milton* v. *Wainwright* (1972) 407 U.S. 371 [33 L.Ed.2d 1, 92 S.Ct. 2174].) Accordingly, a harmless error analysis is appropriate here.

Defendant also contends that the confession here was truly coerced by use of the psychological coercion employed in *Payne* v. *Arkansas, supra*, 356 U.S. 560. After reviewing the conduct in *Payne*, as compared to the police interrogation here, we must disagree. While the police used some of the interrogation techniques described in *Miranda*, the confession here followed shortly after the officers told defendant that his wife had told them the truth. In *Payne*, defendant was held incommunicado for three days, was not advised of his rights, was not taken before a magistrate, and was finally told by the chief of police that a lynch mob was waiting for him outside. (*Payne* v. *Arkansas, supra*, 356 U.S. 560, 567 [2 L.Ed.2d 975, 980-981].) This was not the situation here. Applying the totality of the circumstances test, we find that the violation here was, at most, a prophylactic *Miranda* violation that is subject to the *Chapman* harmless error test, as applied in *Rose* v. *Clark, supra*, 478 U.S. 570.[10]

---

[9] In *People* v. *Lee* (1987) 43 Cal.3d 666 [238 Cal.Rptr. 406, 738 P.2d 752], our Supreme Court applied *Rose* v. *Clark, supra*, 478 U.S. 570, in a similar situation. In *Lee*, the court found instructional error regarding an element of the offense that would have been reversible per se under prior law. The court found the reversible per se standard is now "inappropriate" and that the *Chapman* test should be applied. (43 Cal.3d at pp. 674-676.)

Similarly, in *People* v. *Dyer* (1988) 45 Cal.3d 26, 64 [246 Cal.Rptr. 209, 753 P.2d 1], our Supreme Court again followed *Rose* v. *Clark* and held that the reversible per se standard of review for *Beeman* error (*People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318]) is "inappropriate" and that the *Chapman* test should be applied in such cases.

As stated in *People* v. *Morris, supra*, 192 Cal.App.3d 380, 392, footnote 5, the reversible per se standard "may need to be reiterated if it is to remain viable in light of" *Rose* v. *Clark, supra*, 478 U.S. 570.

We note, however, that our Supreme Court has denied a request for review in *Porter*.

[10] As the United States recently said in *Satterwhite* v. *Texas* (1988) 486 U.S. 249, 256 [100 L.Ed.2d 284, 293, 108 S.Ct. 1792]: "The harmless error rule ' "promotes public respect for

## IV

## WAS THE ERROR PREJUDICIAL?

■ "[S]ince *Chapman*, 'we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.'" (*Rose* v. *Clark* [, *supra*,] 478 U.S. 570, 576 [92 L.Ed.2d 460, 469, 106 S.Ct. 3101]; *Satterwhite* v. *Texas, supra*, 486 U.S. 249, 256 [100 L.Ed.2d 284, 293]; *U.S.* v. *Wolf* (6th Cir. 1989) 879 F.2d 1320, 1324.) The *Rose* opinion then gives a number of examples of cases in which the harmless error test has been applied, including *Milton* v. *Wainwright, supra*, 407 U.S. 371. We find *Milton* dispositive here.

In *Milton*, several confessions were introduced at trial. One of the confessions was obtained by an undercover police officer who was placed in a cell with defendant. The court held that any error in the admission of the confession was harmless beyond a reasonable doubt. The evidence of guilt was overwhelming, and the previous, properly admitted confessions left no doubt that the jury would have reached the same verdict without hearing the challenged confession. (*Milton* v. *Wainwright, supra*, 407 U.S. 371.)

Other multiple confession cases reach the same result. Originally, such cases were classified as a "rare case" exception to the *Dorado* rule. (*People* v. *Dorado, supra*, 62 Cal.2d 338; 5 Witkin & Epstein [Cal. Criminal Law (2d ed. 1989)] § 2720, pp. 3272-3275.) Thus, *People* v. *Jacobson* (1965) 63 Cal.2d 319 [46 Cal.Rptr. 515, 405 P.2d 555] held that automatic reversal was not required in the multiple confession situation, since "[i]t is not plausible, having reviewed this record, to conclude that 10 statements were sufficiently more persuasive than only eight and that the elimination of two would have altered the outcome." (*Id.*, at p. 331; see also, *People* v. *Powell* (1967) 67 Cal.2d 32, 53 [59 Cal.Rptr. 817, 429 P.2d 137]; *People* v. *Treloar* (1966) 64 Cal.2d 141, 152 [49 Cal.Rptr. 100, 410 P.2d 620]; *People* v. *Cotter, supra*, 63 Cal.2d 386, 398.)

However, in the more recent case of *People* v. *Hinds, supra*, 154 Cal.App.3d 222, the court said: "application of even a 'rare case' rule of harmless error is inconsistent with the fundamental policies proscribing use of coerced confessions." In a footnote, the court notes that it did not decide if the rare case exception might apply if the only constitutional violation is a

---

the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error."'" [Citations.]"

*Miranda* error. (*Id.*, at p. 241, fn. 4; see also, *People* v. *Morris, supra*, 192 Cal.App.3d 380, 392, fn. 5.) That question has been answered, at least for the federal standard, by the subsequent decision in *Rose* v. *Clark, supra*, 478 U.S. 570.

The case here is similar to *People* v. *Quicke* (1969) 71 Cal.2d 502 [78 Cal.Rptr. 683, 455 P.2d 787]. In that case, our Supreme Court held that the reasoning supporting the reversal per se rule "does not apply if the record contains a properly admitted confession that is as damaging as the one improperly admitted." (*Id.*, at p. 516.) Accordingly, the court found no prejudice if there was one properly admitted confession. (*Ibid.*)

The same reasoning applies here. Defendant's supervisor and friend, John Nall, testified that defendant's wife had called him and told him that defendant had murdered the armored car driver. She gave him details about the crimes. After defendant's arrest, defendant called Mr. Nall from jail three or four times. Defendant confessed the killing to Mr. Nall and gave him the same details as defendant's wife had given to Mr. Nall. The murder weapon was found in defendant's home. There was no reasonable doubt that the jury would have reached the same conclusions even if they had not heard defendant's confession to the officers. (*People* v. *Jacobson, supra*, 63 Cal.2d 319.)

"Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. As we have repeatedly stated, 'the Constitution entitles a criminal defendant to a fair trial, not a perfect one.'" (*Rose* v. *Clark, supra*, 478 U.S. 570, 579 [92 L.Ed.2d 460, 471].) Since one valid confession, consisting of statements made in several telephone calls to Mr. Nall, was introduced into evidence, the improper introduction of another confession, obtained in violation of a prophylactic *Miranda* rule, was not prejudicial because the jury could properly infer guilt from the properly admitted confession. Accordingly, we find any error harmless beyond a reasonable doubt.

V, VI*

. . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 608.

## VII

### DISPOSITION

The judgment is affirmed.

Dabney, J., and Timlin, J., concurred.

A petition for a rehearing was denied October 24, 1990, and appellant's petition for review by the Supreme Court was denied January 4, 1991. Arabian, J., was of the opinion that the petition should be granted.