# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56575-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRADLEY JAMES CURTIS, | |
| Appellant. | |

CHE, J. — Curtis appeals his convictions and sentence for two counts of second degree unlawful possession of a firearm. He argues that the State produced insufficient evidence to support both convictions, the trial court erred by imposing a DNA collection fee as part of his judgment and sentence, and the trial court erred by failing to specify in his judgment and sentence that no legal financial obligations (LFOs) may be satisfied out of Social Security benefits.

We hold that the trial court erred by failing to expressly find that Curtis knowingly possessed the firearms but that that error was harmless. Additionally, we accept the State's concession that the trial court erred by imposing a DNA collection fee and remand for correction of the judgment and sentence. Although not required, the trial court may address on remand a request that the judgment and sentence specify no LFOs may be collected from social security

benefits, if warranted. Accordingly, we affirm Curtis's convictions and remand for correction of the judgment and sentence.

FACTS

In 2011, Curtis was convicted of indecent liberties, a class B felony. As part of his sentence, he was prohibited from possessing firearms.

In 2021, the superior court issued a temporary order for protection restraining Curtis from his wife. The protection order required Curtis to surrender any firearms or other dangerous weapons. Curtis's wife informed the officers serving the protection order that Curtis had a shotgun, but Curtis denied having any firearms.

Law enforcement obtained a search warrant for Curtis's home, which he shared with his wife. During the search, law enforcement found a shotgun and a rifle as well as numerous gun parts and boxes of ammunition. Officers also found a shipping invoice for gun parts and machining tools used to assemble gun parts into working rifles.

The State charged Curtis with two counts of second degree unlawful possession of a firearm. Curtis filed a motion to suppress the firearms evidence arguing that the search warrant was deficient. The trial court denied his motion.

Curtis waived his right to a jury trial and entered stipulated facts with the trial court. The parties entered into a stipulation, which was signed by Curtis, entitled "stipulated facts and findings of guilty," and the trial court signed the document as well. It stated:

**I. STIPULATED FACTS**

1.1. The defendant is Bradley James Curtis, DOB: 01-11-1974. The defendant was convicted of Indecent Liberties, a class B felony that was not classified as a serious offense, on -2-07-2011, in Thurston County Superior Court, Thurston County Superior Court Number 03-1-02154-1.

1.2.    At the time of sentencing for the felony mentioned above, a written warning about the prohibition against possessing firearms was included in the judgment and sentence. The defendant reviewed that warning before signing the judgment and sentence.

1.3.    On 06-19-2021, Deputy Tyler Nichols served a search warrant on the defendant's home located at 626 North Military Road, Winlock WA, 98596. Inside the closet by the laundry room, the officer found a .410 caliber Rossi shotgun. This is the firearm referred to in Count 1.

1.4.    The deputy also found in Curtis's bedroom a locked black case that contained a rifle with no serial number, that had a SBR upper receiver, with the letters "BMP8B" stamped on the receiver. This is the firearm referred to in Count 2.

1.5.    The deputy also found in Curtis's home gun parts, including receivers, and boxes of ammunition of various calibers.

1.6.    The deputy found in Curtis's home a shipping invoice from Delta Team Tactical, in Orem UT, for rifle parts.

1.7.    In the defendant's shed, the deputy found gun parts and machining tools used for manufacturing gun parts to be assembled in to working rifles.

## II. FINDINGS OF GUILTY

2.1.    Based on the facts contained in this stipulation, the court finds the defendant guilty of unlawful possession of a firearm in the second degree as charged in count 1.

2.2.    Based on facts contained in this stipulation, the court finds the defendant guilty of unlawful possession of a firearm in the second degree as charged in count 2.

2.3.    The court will enter a judgment and sentence consistent with these findings.

Clerk's Papers at 48-50.

The trial court found Curtis guilty of both counts. The trial court sentenced Curtis to six months confinement with the option to serve the sentence under electronic monitoring. The court imposed LFOs including a $500 victim assessment and $100 DNA collection fee.

Curtis appeals.

ANALYSIS

I. INSUFFICIENT EVIDENCE

Curtis argues that the stipulated facts failed to prove that he knowingly possessed either firearm and therefore insufficient evidence supported his convictions. We disagree.

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find that all of the elements of the crime charged were proven beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When a defendant challenges the sufficiency of the evidence, he admits the truth of the State's evidence, and all reasonable inferences drawn from that evidence are to be construed in favor of the State. *Id.* at 265-66. In a sufficiency of the evidence determination, both circumstantial and direct evidence are equally reliable. *Id.* at 266. We review sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

"A stipulated facts trial is still a trial of the defendant's guilt or innocence." *State v. Mierz*, 127 Wn.2d 460, 469, 901 P.2d 286 (1995). The burden of proof remains on the State. *State v. Johnson*, 104 Wn.2d 338, 342, 705 P.2d 773 (1985). The defendant is not precluded from offering evidence or cross-examining witnesses, but stipulates to the evidence presented by the State. *Id*. at 342-43. The stipulation serves as an agreement by the defendant "that if the State's witnesses were called, they would testify in accordance with the summary presented by

4

the prosecutor." *State v. Wiley*, 26 Wn. App. 422, 425, 613 P.2d 549 (1980). A stipulation to facts is an express waiver conceding for the purpose of the trial that the facts are true and there is no need to prove the facts. *State v. Wolf*, 134 Wn. App. 196, 199, 139 P.3d 414 (2006) (quoting *Key Design, Inc. v. Moser*, 138 Wn.2d 875, 893-94, 983 P.2d 653 (1999)).

"The criminal rules for superior court judges require that, following a bench trial, the judge enter findings of fact and conclusions of law." *State v. Banks*, 149 Wn.2d 38, 43, 65 P.3d 1198 (2003). CrR 6.1(d) states:

> In a case tried without a jury, the court shall enter findings of fact and conclusions of law. In giving the decision, the facts found and the conclusions of law shall be separately stated. The court shall enter such findings of fact and conclusions of law only upon 5 days' notice of presentation to the parties.

"Each element must be addressed separately, setting out the factual basis for each conclusion of law," and the findings must specifically state that each element has been met. *Banks*, 149 Wn.2d at 43. Where the trial court fails to meet these requirements, appellate review is subject to a harmless error analysis. *Id*.

To convict Curtis of second degree unlawful possession of a firearm, the State had to prove beyond a reasonable doubt that Curtis knowingly possessed a firearm and that he had previously been convicted of a felony in Washington.[1] RCW 9.41.040(2)(a)(i); *State v. Anderson*, 141 Wn.2d 357, 359, 5 P.3d 1247 (2000).

The findings of fact do not address the element of "knowledge." This was error. We must next determine whether that error was harmless. *Banks*, 149 Wn.2d at 43.

---

[1] Curtis argues that if we interpret the trial court's order entering stipulated findings and conclusions to amount to Curtis stipulating to his guilt he received ineffective assistance of counsel. Because it is clear from the record that Curtis stipulated to facts, not his guilt, we do not reach this alternative argument.

Under the harmless error analysis, we determine "'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Banks*, 149 Wn.2d at 44 (quoting *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002)). "'An error is not harmless beyond a reasonable doubt where there is a reasonable probability that the outcome of the trial would have been different had the error not occurred. . . . A reasonable probability exists when confidence in the outcome of the trial is undermined.'" *Id*. (quoting *State v. Powell*, 126 Wn.2d 244, 267, 893 P.2d 615 (1995)).

Here, the trial court's findings and conclusions necessitate an inference of knowledge. The stipulated facts established that two firearms were found in Curtis's home, and that the rifle was found in a case in Curtis's bedroom. That Curtis knowingly possessed the shotgun and rifle is further bolstered by the assortment of ammunition, gun tools, and shipping invoice for rifle parts also found in Curtis' home and shed. Taking these facts in the light most favorable to the State, which we must, we hold that the stipulated facts were sufficient to prove that Curtis knowingly possessed both firearms. Accordingly, we hold that the trial court's error in not entering findings specifically addressing knowledge was harmless beyond a reasonable doubt.

## II. DNA COLLECTION FEE

Curtis also argues, and the State agrees, that the trial court erred by imposing a DNA collection fee given that he has a prior felony conviction from Thurston County in 2011. We agree and remand for correction of the judgment and sentence.

Under RCW 43.43.7541, the DNA collection fee is not mandatory if the defendant's DNA has already been collected due to a prior conviction. At trial, the State informed the court that Curtis's DNA had not been previously collected despite his prior felony conviction.

However, on appeal, the State now concedes this issue and agrees with Curtis that Curtis's DNA has previously been collected and therefore the collection fee was improperly imposed. We accept the State's concession and remand to the trial court to strike the DNA collection fee.

### III. SOCIAL SECURITY BENEFITS

Curtis also argues that we must remand for the trial court to correct his judgment and sentence to clarify that no LFOs may be satisfied by social security benefits. We disagree.

Pursuant to 42 U.S.C. § 407(a), LFOs may not be satisfied through application of Social Security benefits. *State v. Dillon*, 12 Wn. App. 2d 133, 153, 456 P.3d 1199 (citing *State v. Catling*, 193 Wn.2d 252, 264, 438 P.3d 1174 (2019)), *review denied*, 195 Wn.2d 1022 (2020). However, Curtis is not entitled to appellate relief on his claim of error.

First, Curtis did not raise this issue below and, therefore, it is not preserved for appeal. "The general rule is that appellate courts will not consider issues raised for the first time on appeal." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007) (citing RAP 2.5(a)). Although a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right, Curtis's claim does not meet that standard. The prohibition against LFOs being satisfied through Social Security benefits is derived from a federal statute. See 42 U.S.C. § 407(a). Furthermore, the claimed error is not manifest because there is no indication in the record that Curtis receives Social Security benefits. *See State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). As such, Curtis fails to show that he was actually prejudiced by the absence of language in the judgment and sentence providing that the LFOs imposed by the superior court could not be satisfied through Social Security benefits. *See Kirkman*, 159 Wn.2d at 926-27.

7

Second, because nothing in the record suggests that Curtis receives Social Security benefits, this case is distinguishable from *Dillon* and *Catling*. In *Dillon*, we remanded the case to the trial court "to amend the judgment and sentence to indicate that the $500 victim assessment fee may not be satisfied out of any funds subject to 42 U.S.C. § 407(a)." 12 Wn. App. 2d at 153. We did so because the record in that case indicated that "Dillon's sole source of income [was] his Social Security disability funds." *Id*. Likewise, in *Catling*, our Supreme Court remanded the case "to the trial court to revise the judgment and sentence and repayment order . . . to indicate that [an] LFO may not be satisfied out of any funds subject to . . . 42 U.S.C. § 407(a)." 193 Wn.2d at 266. During the sentencing hearing in that case, "Catling's attorney argued that . . . Catling's sole source of income was Social Security disability benefits." Id. at 255.

Here, the record does not contain any evidence that Curtis receives Social Security benefits. If evidence that Curtis receives Social Security benefits exists outside the record, Curtis may consider bringing a personal restraint petition. *See McFarland*, 127 Wn.2d at 338 n.5. If at a future date, Curtis receives income from Social Security benefits and the State attempts to collect in violation of the antiattachment statute, nothing prevents Curtis from asking the trial court for relief from any improper attempts at collection at that time.

However, because we are remanding Curtis's judgment and sentence to the trial court to strike the DNA collection fee, the trial court may also specify that no LFOs may be satisfied out of Social Security benefits, if warranted.

We affirm Curtis's convictions and remand to the trial court to correct his judgment and sentence.

No. 56575-7-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, C

Birk, J.*

---

* Sitting in Division II pursuant to RCW 2.06.040 by order of the Associate Chief Justice.

9